UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
**MILWAUKEE DIVISION**

BEVERLY WILLIAMS,

        Plaintiff,

   v.

MILWAUKEE PUBLIC SCHOOLS,

        Defendant.

## COMPLAINT

### PRELIMINARY STATEMENT

1.    Plaintiff Beverly Williams ("Plaintiff") brings this action against her former employer, Milwaukee Public Schools ("Defendant") for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and Americans with Disabilities Act ("ADA"), as amended, for harassment, discipline, suspension and termination because of her race, and failure to provide a reasonable accommodation, or engage in the required interactive process to determine whether it could reasonably accommodate her disability.

2.    Plaintiff brings this action pursuant to Title VII and ADA for the purpose(s) of obtaining relief for back pay, frontpay, punitive damages, costs, attorneys' fees, injunctive relief, and/or any such other relief that the Court may deem appropriate.

### JURISDICTION AND VENUE

3. The Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 28 U.S.C. § 1331, this action being brought under Title VII and ADA.

4. The Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367, as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) in the U.S. District Court for the Eastern District of Wisconsin because a substantial part of the events giving rise to the claims occurred within the District and Defendants maintained substantial and systematic contacts in this District during the events that gave rise to the claims.

<u>PARTIES</u>

6. Defendant Milwaukee Public Schools ("Defendant" of "MPS") is a Public School District with an office in Milwaukee City, Milwaukee County, Wisconsin.

7. Plaintiff Beverly Williams ("Plaintiff" or "Beverly") is an adult resident of Milwaukee City, Milwaukee County, Wisconsin.

<u>GENERAL ALLEGATIONS</u>

8. Plaintiff, an African American female, worked for Respondent for 20 years, most recently as a Special Education Teacher at Lloyd Barbee Montessori School.

9. Defendant has acknowledged Plaintiff is a disabled individual.

10. In February of 2014, Plaintiff was diagnosed with Degenerative Disc Disease of the lumbar spine and neural foraminal stenosis at all levels, a permanent disability that made it significantly more difficult to do her job and to basic life activities. This particularly pertains to difficulty in climbing stairs.

11. She also suffered from a neurological disease caused by induced trauma to the basal ganglia of the brain, making it difficult for Plaintiff to eat, sleep, drink, chew and even speak. Due to her neurological disease, Plaintiff was allowed to delegate certain tasks – such as calling parents – for a short period of time. However, at the urging of Regional Director of Specialized Services, Amy Kowalski, that accommodation was abruptly and discriminatorily ended.

12. On March 13, 2014, Ms. Watters advised Ms. Loss to "look the other way" should a student physical abuse Plaintiff.

13. On March 14, 2014, Plaintiff received doctor's advice in the form of a medical note concerning her Degenerative Disc Disease that Plaintiff would need to limit the number of stairs she climbed at work.

14. On June 8, 2014, Plaintiff reasonably requested of her Principal, Catherine Loss ("Ms. Loss") that she be transferred from a 3rd floor classroom to a 2nd, 1st or basement-level classroom to reduce the number of stairs she would have to claim, per her doctor's advice concerning

her disability.

15.     In response, in June of 2014, Ms. Loss attempted to transfer Plaintiff to another school, rather than accommodate Plaintiff. Ultimately, Ms. Loss said it just would not be possible to transfer Plaintiff to a lower classroom – without explaining why not. Ms. Loss did not engage in the interactive process.

16.     Plaintiff's co-worker overheard Ms. Loss saying she wished she could just get rid of Plaintiff, but felt she couldn't because Plaintiff was a special education teacher; in what she overheard, it was made clear that Ms. Loss did not like Plaintiff.

17.     A few days after her accommodation request, on June 16, 2014, for the first time in her long tenure with MPS, Plaintiff received an "unsatisfactory" performance evaluation.

18.     A few days after that, on June 20, 2014, Plaintiff filed a discrimination complaint against Respondent with the Equal Employment Opportunities Commission ("EEOC"), alleging Ms. Loss' discrimination and refusal to accommodate her disability.

19.     After Plaintiff filed her complaint, the discrimination and refusal to accommodate only worsened.

20.     On or about August 24, 2014, Ms. Loss made disparaging remarks about Plaintiff, and her EEOC case.

21.     Shortly thereafter, still in 2014, Ms. Loss required that Plaintiff

walk students to their buses, causing Plaintiff to walk an extra 83 stairs each way twice per day – something that would seem to worsen Plaintiff's disability based on what Plaintiff's doctors had advised Defendant. This was not one of Plaintiff's assigned duties, and another staff member had already been assigned that task.

22. On November 6, 2014, Ms. Loss advised MPS Special Education Supervisor Dorothy Watters ("Ms. Watters") that Plaintiff's unsatisfactory evaluation was revoked, causing Ms. Watters to use profanity.

23. In December of 2014, Plaintiff observed Ms. Watters demeaned an African American family of a student, referring to herself as the "white lady." This demonstrates Watters' propensity to engage in racially demeaning conduct as shown in email exchanges between herself and others.

24. Then, in early 2016, Plaintiff's pay was unlawfully docked.

25. In September of 2016, Ms. Loss falsely accused Plaintiff of failing to attend a mandatory Open House.

26. In October of 2016, Plaintiff is accused of being "AWOL" when she attended a doctor's appointment and had provided the requisite notice to her employer prior to attending same.

27. Later, in 2016, Ms. Loss assigned two Caucasian teachers to lower level classrooms despite Plaintiff's outstanding accommodation request for a transfer to a lower level classroom.

28. On or about January 11, 2017, Ms. Loss falsely accused

Plaintiff of stealing a student's cellphone.

29. On or about January 12, 2017, Ms. Loss failed to protect Plaintiff from workforce violence when she permitted an angry and violent parent to "roam the halls" looking for Plaintiff. That parent entered Plaintiff's classroom unannounced and placed Plaintiff in fear of violence.

30. The same day, January 12, 2017, after the attempted attack, Plaintiff requested police assistance of Ms. Loss. Ms. Loss denied the request even though other teachers are granted police assistance upon request.

31. On January 12, 2017, student "KF" is assigned to another classroom.

32. One week later, on January 20, 2017, Plaintiff is suspended for failing to provide educational services to "KF" even though he had been assigned to another classroom since January 12, 2017.

33. On February 3, 2017, Ms. Loss coerced Plaintiff into accepting a transfer.

34. On February 6, 2017, Ms. Loss gave Plaintiff insufficient time to remove her belongings from her class in effectuating part one of the transfer.

35. On February 7, 2017, Plaintiff filed a complaint of workplace discrimination and harassment against Ms. Loss.

36. Also, on February 7, 2017, Plaintiff reported to her new school, when she was immediately suspended due to allegations from Ms. Loss at

her previous school.

37. On February 9, 2017, the District acknowledged receipt of the discrimination and harassment complaint against Ms. Loss, but refused to investigate it.

38. On February 20, 2017, Plaintiff was terminated for allegedly (1) leaving her room in disarray; (2) destroying student's work while packing up her things; (3) stealing a VCR, pencil sharpener and three ("3") books; (4) saying, "I can't believe you" to an assistant in a muffled tone; (5) destroying work belonging to a classroom assistant; (6) not providing educational services to KF after he had transferred classrooms; (7) accusing an engineer of being sent to spy on her; and, (8) telling an Employment Relations employee that she would need to be paid for the time taken to pack up her room.

39. Despite Defendant terminating Plaintiff for taking a cellphone battery, Plaintiff did not take any cell phone battery from a phone nor does she know how to do so. She did not take any cellphone beyond temporarily taking it after use in class, per school policy.

40. Ms. Waller, a Caucasian teacher, left the same classroom Plaintiff had left in transferring within the district. Ms. Waller left the classroom in complete disarray and was not disciplined and continues to work in Milwaukee School District.

41. In Plaintiff's case, the "mess" in the room was caused by

Plaintiff having insufficient time to clean up, as she was told she had to leave by 6PM. In Ms. Waller's case, she left the room in a complete mess despite being afforded sufficient time to clean up.

42.     Plaintiff did not destroy bulletins or students' work, or steal any property of any students' or Defendants' property.

<div align="center">

FIRST CLAIM FOR RELIEF
Violations of the ADA –
Refusal to Reasonably Accommodate Disability

</div>

43.     Plaintiff reasserts and incorporates by reference all previous paragraphs as if they were set forth herein.

44.     During her employment with Defendant, Plaintiff was entitled to the rights, protections, and benefits provided under ADA.

45.     During her employment with Defendant, Plaintiff was an employer within the meaning of ADA.

46.     Plaintiff made several reasonable requests for accommodation of her disability of Degenerative Disc Disease of the lumbar spine and neural foraminal stenosis at all levels starting in 2014, when she requested a classroom change to a lower floor so she would not have to climb as many stairs.

47.     Plaintiff submitted medical documentation in support of her request that she should not have to climb so many stairs because of her permanent medical condition.

48.     Plaintiff's request for accommodation was denied without Ms. Loss or any other of Defendant's employees engaging in the requisite interactive process.

49.     After she lodged her complaint, in 2016, two Caucasian workers were placed at lower floors despite not being disabled.

50.     In retaliation for Plaintiff's request, and for her complaints about not being accommodated, Ms. Loss required Plaintiff to walk her students to and from the bus each day, which was not one of her assigned responsibilities. This would certainly, and did, worsen Plaintiff's disability.

51.     Upon information and belief, the reason provided to Plaintiff for refusing to accommodate Plaintiff, is false. It is not a burden since two Caucasian workers were later placed to teach at lower floors. And, Defendant refused to engage in the interactive process to determine with actual data whether it could reasonably accommodate Plaintiff.

52.     As Defendant has not acted in good faith and in derogation of Plaintiff's rights, Plaintiff is entitled to punitive and compensatory damages. In the alternative, if the court finds violations to not be willful, Defendant shall be liable to pay prejudgment interest at the applicable legal rate.

53.     Successful Plaintiff is entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action under ADA.

SECOND CLAIM FOR RELIEF

## Violations of the ADA –
## Wrongful Discharge

54.     Plaintiff reasserts and incorporates by reference all previous paragraphs as if they were set forth herein.

55.     During her employment with Defendant, Plaintiff was entitled to the rights, protections, and benefits provided under ADA.

56.     During her employment with Defendant, Plaintiff was an employer within the meaning of ADA.

57.     Plaintiff performed to the expectations of her job for more than 20 years before her termination in 2017.

58.     Plaintiff's discharge was pretextual in that the reasons provided for termination are false. They were motivated by discrimination.

59.     Ms. Waller, a non-disabled Caucasian employee of Defendant, was treated better than Plaintiff when she was not disciplined for leaving her classroom in a mess despite having sufficient time to pack her things and clean up. Plaintiff was not provided sufficient time to pack her things and clean up.

60.     On February 20, 2017, Plaintiff was terminated for allegedly (1) leaving her room in disarray; (2) destroying student's work while packing up her things; (3) stealing a VCR, pencil sharpener and three ("3") books; (4) saying, "I can't believe you" to an assistant in a muffled tone; (5) destroying work belonging to a classroom assistant; (6) not providing educational

services to KF after he had transferred classrooms; (7) accusing an engineer of being sent to spy on her; and, (8) telling an Employment Relations employee that she would need to be paid for the time taken to pack up her room.

61.     Despite Defendant terminating Plaintiff for taking a cellphone battery, Plaintiff did not take any cell phone battery from a phone nor does she know how to do so. She did not take any cellphone beyond temporarily taking it after use in class, per school policy.

62.     Ms. Waller, a Caucasian teacher, left the same classroom Plaintiff had left in transferring within the district. Ms. Waller left the classroom in complete disarray and was not disciplined and continues to work in Milwaukee School District.

63.     In Plaintiff's case, the "mess" in the room was caused by Plaintiff having insufficient time to clean up, as she was told she had to leave by 6PM. In Ms. Waller's case, she left the room in a complete mess despite being afforded sufficient time to clean up.

64.     Plaintiff did not destroy bulletins or students' work, or steal any property of any students' or Defendants' property.

65.     Plaintiff could not provide educational services to KF after Ms. Loss had removed him from Plaintiff's classroom. Plus, this false charge had already been asserted in the suspension charge and resolved by Plaintiff's transfer.

66. All other allegations that led to Plaintiff's discharge are also false.

67. Ms. Loss had made clear she had wanted to transfer Plaintiff in 2014 after Plaintiff requested an accommodation of a lower classroom to avoid walking as many steps.

68. Ms. Loss tried to force Plaintiff out by then requiring her to walk more steps by walking her students to and from the bus – in direct opposition to the accommodation request.

69. Ms. Loss also tried to force Plaintiff out by putting her non-disabled Caucasian co-workers into rooms on lower floors so Plaintiff could see she was not going to receive the same treatment.

70. And, Ms. Loss also tried to force Plaintiff out by suspending her on false allegations, and refusing to equitably apply the sick time compensation to her.

71. Plaintiff's co-worker overheard Ms. Loss saying she did not like her and wished she could rid of her but knew she could not because she was a special education teacher.

72. As Defendant has not acted in good faith and in derogation of Plaintiff's rights, Plaintiff is entitled to punitive and compensatory damages. In the alternative, if the court finds violations to not be willful, Defendant shall be liable to pay prejudgment interest at the applicable legal rate.

73. Successful Plaintiff is entitled to reimbursement of the costs

and attorneys' fees expended in successfully prosecuting an action under
ADA.

<div align="center">

THIRD CLAIM FOR RELIEF
Violations of the ADA –
Discrimination in Terms and Conditions of Employment Because of
Disability

</div>

74. Plaintiff reasserts and incorporates by reference all previous paragraphs as if they were set forth herein.

75. During her employment with Defendant, Plaintiff was entitled to the rights, protections, and benefits provided under ADA.

76. During her employment with Defendant, Plaintiff was an employer within the meaning of ADA.

77. Plaintiff is aware that Ms. Loss did not like her at least in part because of her disability; and, on one occasion, Plaintiff was informed by her co-worker that she overheard Ms. Loss saying she wishes she could get rid of Plaintiff but cannot because she's a special education teacher.

78. On or about October 20, 2016, Plaintiff was a victim of disparate treatment on the basis of disability in that Ms. Loss failed to follow proper procedure when Complainant had been sick and used sick time compensation.

79. Plaintiff is a victim of disparate treatment on the basis of disability in that Ms. Loss refused to protect her from attack by a parent when her request that the police be called for her safety was denied after a

parent yelled at Plaintiff and screamed profanities at her, and had to be removed by security. Ms. Loss has called police before for non-disabled Caucasian employees.

80.     Plaintiff is a victim of disparate treatment on the basis of disability in that Ms. Loss retaliated against Plaintiff and refused to take action when Plaintiff complained that African American children were being injured in the classroom.

81.     On or about January 11, 2017, Plaintiff was reprimanded for taking a student's phone away when she removed the phone for use during class – per school policy. Ms. Loss accused her of removing the battery from the phone, which Plaintiff doesn't even know how to do.

82.     Plaintiff was accused of refusing to teach a student referred to by initials "KF" – and suspended -, after KF had been removed from her class. Of course, Plaintiff could not teach a student that had been removed from her class. And, Plaintiff never refused to teach KF.

83.     Ms. Loss repeatedly refused to accommodate Plaintiff's disability – even by not moving her to a lower floor per the doctor's medical report that said she should reduce the amount of stair climbing. Non-disabled Caucasian employees were allowed to work on the lower floors. Ms. Loss refused to even engage in the interactive process to see whether it would be a reasonable accommodation to move Plaintiff to a lower floor. Instead, Defendant just said – without justification – that it would create a

hardship.

84.     To spite Plaintiff and her condition, Ms. Loss also required that Plaintiff walk an extra 83 steps each way twice per day to walk students to and from their buses when another employee was delegated this task – and this was not one of Plaintiff's job duties.

85.     Plaintiff was treated differently by Ms. Loss than Caucasian, non-disabled, co-workers, who harassed her and inappropriately reprimanded her.

86.     As Defendant has not acted in good faith and in derogation of Plaintiff's rights, Plaintiff is entitled to punitive and compensatory damages. In the alternative, if the court finds violations to not be willful, Defendant shall be liable to pay prejudgment interest at the applicable legal rate.

87.     Successful Plaintiff is entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action under ADA.

<u>FOURTH CLAIM FOR RELIEF</u>
Violations of the Title VII –
Termination Because of Race

88.     Plaintiff reasserts and incorporates by reference all previous paragraphs as if they were set forth herein.

89.     During her employment with Defendant, Plaintiff was entitled to the rights, protections, and benefits provided under Title VII.

90. During her employment with Defendant, Plaintiff was an employer within the meaning of Title VII.

91. Plaintiff is a victim of disparate treatment on the basis of race, which is African American.

92. Plaintiff performed to the expectations of her job for more than 20 years before her termination in 2017.

93. Ms. Waller, a Caucasian employee of Defendant, was treated better than Plaintiff when she was not disciplined for leaving her classroom in a mess despite having sufficient time to pack her things and clean up. Plaintiff was not provided sufficient time to pack her things and clean up. All other reasons for termination were false.

94. Plaintiff's discharge was pretextual in that the reasons provided for termination are false.

95. On February 20, 2017, Plaintiff was terminated for allegedly (1) leaving her room in disarray; (2) destroying student's work while packing up her things; (3) stealing a VCR, pencil sharpener and three ("3") books; (4) saying, "I can't believe you" to an assistant in a muffled tone; (5) destroying work belonging to a classroom assistant; (6) not providing educational services to KF after he had transferred classrooms; (7) accusing an engineer of being sent to spy on her; and, (8) telling an Employment Relations employee that she would need to be paid for the time taken to pack up her room.

96.     Despite Defendant terminating Plaintiff for taking a cellphone battery, Plaintiff did not take any cell phone battery from a phone nor does she know how to do so. She did not take any cellphone beyond temporarily taking it after use in class, per school policy.

97.     Ms. Waller, a Caucasian teacher, left the same classroom Plaintiff had left in transferring within the district. Ms. Waller left the classroom in complete disarray and was not disciplined and continues to work in Milwaukee School District.

98.     In Plaintiff's case, the "mess" in the room was caused by Plaintiff having insufficient time to clean up, as she was told she had to leave by 6PM. In Ms. Waller's case, she left the room in a complete mess despite being afforded sufficient time to clean up.

99.     Plaintiff did not destroy bulletins or students' work, or steal any property of any students' or Defendants' property.

100.    Plaintiff could not provide educational services to KF after Ms. Loss had removed him from Plaintiff's classroom. Plus, this false charge had already been asserted in the suspension charge and resolved by Plaintiff's transfer.

101.    All other allegations that allegedly led to Plaintiff's discharge are also false.

102.    Ms. Loss had made clear she had wanted to transfer Plaintiff in 2014.

103.    Ms. Loss tried to force Plaintiff out by then requiring her to walk more steps by walking her students to and from the bus.

104.    Ms. Loss also tried to force Plaintiff out by putting her non-disabled Caucasian co-workers into rooms on lower floors so Plaintiff could see she was not going to receive the same treatment.

105.    And, Ms. Loss also tried to force Plaintiff out by giving her low performance markers for the first time in her 20 years, suspending her on false allegations, and refusing to equitably apply the sick time compensation to her.

106.    Plaintiff also overheard Ms. Loss saying she did not like her and wished she could rid of her but knew she could not because she was a special education teacher.

107.    As Defendant has not acted in good faith and in derogation of Plaintiff's rights, Plaintiff is entitled to punitive and compensatory damages. In the alternative, if the court finds violations to not be willful, Defendant shall be liable to pay prejudgment interest at the applicable legal rate.

108.    Successful Plaintiff is entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action under Title VII.

## FIFTH CLAIM FOR RELIEF
Violations of the Title VII –
Discrimination in Terms and Conditions of Employment Because of Race

109.     Plaintiff reasserts and incorporates by reference all previous paragraphs as if they were set forth herein.

110.     During her employment with Defendant, Plaintiff was entitled to the rights, protections, and benefits provided under Title VII.

111.     During her employment with Defendant, Plaintiff was an employer within the meaning of Title VII.

112.     Plaintiff is aware that Ms. Loss did not like her because of her race; and, on one occasion, Plaintiff overheard Ms. Loss saying she wishes she could get rid of Plaintiff but cannot because she's a special education teacher.

113.     On or about October 20, 2016, Plaintiff was a victim of disparate treatment on the basis of race in that Ms. Loss failed to follow proper procedure when Complainant had been sick and used sick time compensation.

114.     Plaintiff is a victim of disparate treatment on the basis of race in that Ms. Loss refused to protect her from attack by a parent when her request that the police be called for her safety was denied after a parent yelled at Plaintiff and screamed profanities at her, and had to be removed by security. Ms. Loss has called police before for Caucasian employees.

115.     Ms. Loss also assisted the parent in entering her classroom in the first place.

116.     Plaintiff is a victim of disparate treatment on the basis of race

in that Ms. Loss retaliated against Plaintiff and refused to take action when Ms. Loss complained that African American children were being injured in the classroom.

117. On or about January 11, 2017, Plaintiff was reprimanded for taking a student's phone away when she removed the phone for use during class – per school policy. Ms. Loss accused her of removing the battery from the phone, which Plaintiff doesn't even know how to do.

118. Plaintiff was accused of refusing to teach a student referred to by initials "KF" – and suspended -, after KF had been removed from her class. Of course, Plaintiff could not teach a student that had been removed from her class. And, Plaintiff never refused to teach KF.

119. Ms. Loss repeatedly refused to accommodate Plaintiff's disability – even by not moving her to a lower floor per the doctor's medical report that said she should reduce the amount of stair climbing. Non-disabled Caucasian employees were allowed to work on the lower floors. Ms. Loss refused to even engage in the interactive process to see whether it would be a reasonable accommodation to move Plaintiff to a lower floor. Instead, Defendant just said – without justification – that it would create a hardship.

120. Then, Ms. Loss required her to walk extra stairs each day by requiring that she walk students to and from the bus each day, which was not one of her position's responsibilities.

121.    Plaintiff was treated differently by Ms. Loss than Caucasian, non-disabled, co-workers, who harassed her and inappropriately reprimanded her.

122.    As Defendant has not acted in good faith and in derogation of Plaintiff's rights, Plaintiff is entitled to punitive and compensatory damages. In the alternative, if the court finds violations to not be willful, Defendant shall be liable to pay prejudgment interest at the applicable legal rate.

123.    Successful Plaintiff is entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action under Title VII.

<div align="center">

SIXTH CLAIM FOR RELIEF
Violations of the ADA –
Discrimination and Termination Because of a Protected Complaint

</div>

124.    Plaintiff reasserts and incorporates by reference all previous paragraphs as if they were set forth herein.

125.    During her employment with Defendant, Plaintiff was entitled to the rights, protections, and benefits provided under ADA.

126.    During her employment with Defendant, Plaintiff was an employer within the meaning of Title ADA.

127.    Plaintiff performed to the expectations of her job for more than 20 years before her termination in 2017.

128.    Plaintiff complained in June of 2014 that Ms. Loss was

discriminating against her and refusing to accommodate her disabilities, and worsening her disabilities by requiring her to walk students to and from the bus each day.

129. Shortly after Plaintiff filed her EEOC complaint, Ms. Loss made disparaging remarks about the EEOC case.

130. Plaintiff complained several times about Ms. Loss between her 2014 complaint and her termination in 2017.

131. Days before her termination on February 20, 2017, Plaintiff complained on February 7, 2017 that Ms. Loss had been discriminating against her and harassing her.

132. In retaliation for Plaintiff Complaining, Ms. Loss continued refusing to accommodate Plaintiff, harassed her, inappropriately reprimanded her, suspended her, and terminated her for pretextual reasons.

133. Ms. Loss also made clear from 2014 that she wanted to transfer Plaintiff rather than accommodating her.

134. Upon information and belief, the reason provided to Plaintiff for refusing to accommodate Plaintiff, is false. It is not a burden since two Caucasian workers were later placed to teach at lower floors. And, Defendant refused to engage in the interactive process to determine with actual data whether it could reasonably accommodate Plaintiff.

135. Moreover, the reasons provided for termination and suspension are false on their face. One of the reasons for termination was the same

reason that had been used for suspension and had been resolved before

Plaintiff's February 7, 2017 complaint of harassment and discrimination

against Ms. Loss.

136.    As Defendant has not acted in good faith and in derogation of

Plaintiff's rights, Plaintiff is entitled to punitive and compensatory damages.

In the alternative, if the court finds violations to not be willful, Defendant

shall be liable to pay prejudgment interest at the applicable legal rate.

137.    Successful Plaintiff is entitled to reimbursement of the costs

and attorneys' fees expended in successfully prosecuting an action under

ADA.

<div align="center">

SEVENTH CLAIM FOR RELIEF
Violations of Title VII –
Discrimination and Termination Because of a Protected Complaint

</div>

138.    Plaintiff reasserts and incorporates by reference all previous

paragraphs as if they were set forth herein.

139.    During her employment with Defendant, Plaintiff was entitled

to the rights, protections, and benefits provided under Title VII.

140.    During her employment with Defendant, Plaintiff was an

employer within the meaning of Title VII.

141.    Plaintiff performed to the expectations of her job for more than

20 years before her termination in 2017.

142.    Plaintiff complained in June of 2014 that Ms. Loss was

discriminating against her because of her race (African American) and refusing to accommodate her disabilities.

143.    Shortly after Plaintiff filed her EEOC complaint, Ms. Loss made disparaging remarks about the EEOC case.

144.    Plaintiff complained several times about Ms. Loss between her 2014 complaint and her termination in 2017.

145.    Days before her termination on February 20, 2017, Plaintiff complained on February 7, 2017 that Ms. Loss had been discriminating against her and harassing her.

146.    In retaliation for Plaintiff Complaining, Ms. Loss continued refusing to accommodate Plaintiff, harassed her, inappropriately reprimanded her, suspended her, and terminated her for pretextual reasons.

147.    Ms. Loss made clear from 2014 that she wanted to transfer Plaintiff rather than accommodating her.

148.    Upon information and belief, the reason provided to Plaintiff for refusing to accommodate Plaintiff, is false. It is not a burden since two Caucasian workers were later placed to teach at lower floors. And, Defendant refused to engage in the interactive process to determine with actual data whether it could reasonably accommodate Plaintiff.

149.    Moreover, the reasons provided for termination and suspension are false on their face. One of the reasons for termination was the same reason that had been used for suspension and had been resolved before

Plaintiff's February 7, 2017 complaint of harassment and discrimination against Ms. Loss.

150.    As Defendant has not acted in good faith and in derogation of Plaintiff's rights, Plaintiff is entitled to punitive and compensatory damages. In the alternative, if the court finds violations to not be willful, Defendant shall be liable to pay prejudgment interest at the applicable legal rate.

151.    Successful Plaintiff is entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action under Title VII.

152.    REQUEST FOR RELIEF

WHEREFORE, it is respectfully prayed that this court grant the following relief:

a)   An Order, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, declaring Defendants' actions as described in the Complaint as unlawful and in violation of Wisconsin Law and applicable regulations and as dilatory or otherwise unjust as defined by Wisconsin Law;

b)   An Order finding that Defendant violated Title VII and the ADA;

c)   An Order finding that Defendant's violations of law were dilatory or otherwise unjust;

d)   Judgment against Defendant in the amount equal to Plaintiff's lost wages in back pay and front pay for Defendant's violations of Title VII and ADA;

e)   An award of compensatory damages in an amount that the Court deems just and reasonable for Defendant's violations of Title VII and ADA;

f) An award of punitive damages in an amount that the Court deems just and reasonable for Defendant's violations of Title VII and ADA;

g) An award in the amount of all costs and attorneys' fees incurred in the course of prosecuting these claims as well as pre-judgment and post-judgment interest; and

h) Such other relief as the Court deems just and equitable.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby requests a jury trial pursuant to FED. R. CIV. P. 38(b).

Dated this 13th day of January, 2019.

<div style="margin-left: 50%;">

Respectfully submitted,

 s/ Maxwell C Livingston
Maxwell C Livingston SBN 1084764
Law Offices of Maxwell Charles Livingston,
200 S Exec Dr., Ste 101
Brookfield WI 53005
Telephone: (262) 789-2741
Fax: (866) 433-4321
Email: max@maxlivingstonlaw.com

</div>